012517Lf

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

JADEAN ELIZABETH ROGGENTIEN, )
)
        Plaintiff, )    No. 16 cv 91 EJM
vs. )
)    ORDER
CAROLYN W. COLVIN, )
ACTING COMMISSIONER OF )
SOCIAL SECURITY, )
)
        Defendant. )

Plaintiff brings this action seeking judicial review of the Commissioner's denial of her application for social security disability insurance benefits (DIB) and supplemental security income (SSI) benefits. Briefing concluded January 5, 2017. The court has jurisdiction pursuant to 42 USC §405(g). Affirmed.

Plaintiff claims (1) the Administrative Law Judge's (ALJ) ruling on Residual Functional Capacity (RFC) failed to consider several impairments, (2) the ALJ failed to develop the record sufficiently, (3) the ALJ's ruling at step five that plaintiff can perform other work is not supported by substantial evidence, and (4) the ALJ failed to consider Listing 11.04. Accordingly, she asserts that the Commissioner's decision is not supported by substantial evidence on the record as a whole.

> [R]eview of the agency decision is limited to whether there is substantial evidence on the record as a whole to support the [Commissioner's] decision. This requires [the court] to do more than merely parse the record for substantial evidence supporting the [Commissioner's] decision. [The court] also must consider evidence in the record that detracts from the weight of the decision. Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.

Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

Plaintiff is a 48-year-old woman with a high school education. She alleges disability based on a missing disc in her back, obesity, status-post cerebral vascular accident, and hypertension. An ALJ considered her claim and, relying on the testimony of a Vocational Expert (VE), concluded that she was not disabled because she could perform other work that exists in significant number in the national economy, such as document preparer, phone quote clerk, addresser or other clerk.

Plaintiff first contends that the ALJ erred in failing to consider several impairments in formulating her RFC, and failed in evaluating the credibility of her subjective limitations. The ALJ must craft an RFC assessment between steps three and four of the five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945; *Clarification of Rules Involving [RFC] Assessment*, 68 Fed. Reg. 51,153-01, 51155 (Aug. 26, 2003). An RFC must be "based on all the relevant evidence in [a claimant's] case record" and must encompass both medical and nonmedical evidence. *Id.* §§ 404.1545(a)(1), (3) & (b), 416.945(a)(1), (3) & (b); *accord* Jones, 619 F.3d at 971. At the hearing level, the ALJ is responsible for the assessment of RFC, 20 C.F.R. §§ 404.1546(c), 416.946(c), an issue specifically reserved to the Commissioner, *id.* §§ 404.1527(d)(2)-(3), 416.927(d)(2)-(3); *accord* Cox v. Astrue, 495 F.3d 614, 620 (8th Cir. 2007). A claimant bears the burden of demonstrating functional limitations that must be incorporated into the RFC assessment. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005); *accord* Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) ("[T]he burden of persuasion to prove disability and demonstrate RFC remains on the claimant."); Stormo v. Barnhart, 377 F.3d 801, 805 (8th Cir. 2004) (similar).

Consequently, "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." Cox, 495

F.3d at 619; *accord* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). While "some medical evidence" must support an ALJ's decision, Jones, 619 F.3d at 971, an ALJ need not base the RFC assessment to any particular medical opinion, *see* Hensley v. Colvin, 829 F.3d 926, 932, at *3 (8th Cir. July 18, 2016). Instead, the ALJ may rely upon a variety of opinions, *see* Julin v. Colvin, 826 F.3d 1082, 1088 (8th Cir. 2016), or even the medical records themselves, *see* Hensley, 829 F.3d at 932.

The ALJ found that plaintiff retained the RFC to:

> Perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except she can no more than occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. She should not work in environments that require balance or climbing ropes, ladders, or scaffolds. She should avoid even moderate exposure to hazards such as dangerous machinery and unprotected heights. In addition, she is limited to jobs that would not require her to work at a production-rate pace, which is defined as assembly line work.

(Tr. 16). To find this, the ALJ relied on plaintiff's treatment records (Tr. 17-18), daily activities (Tr. 18-19), and the opinions of the state-agency experts (Tr. 19).

The ALJ relied on treatment notes showing that plaintiff "improved significantly" following her stroke (Tr. 17). Hensley, 829 F.3d at 932 (ALJ may rely on treatment records to formulate RFC assessment); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (RFC assessment based on all relevant evidence). Plaintiff's vision improved "greatly" within three to four weeks (Tr. 17, 392). Although plaintiff continued to have difficulty with balance, she otherwise "felt better" with less dizziness (Tr. 395). She was able to stand and walk with assistance but no cane (Tr. 395). In October 2012, plaintiff could ambulate independently (Tr. 17, 1114, 1122, 1136, 1158, 1165, 1174). Records from November 2012 show that she had regained the ability to walk independently even on uneven surfaces; could climb stairs without railings; and no longer

3

needed an assistive device (Tr. 17-18, 1078). She also had normal vision (Tr. 18, 1070). By December 2012, plaintiff denied motor weakness or sensory changes, and her reflexes, sensation, and strength were all normal, with no neurological deficits (Tr. 17, 650). She had also resumed driving and was stable on her medications (Tr. 18, 649). In January 2013, a provider recorded that plaintiff walked "frequently" and had "no limitations" on her mobility (Tr. 18, 923). In March 2013 plaintiff was discharged because she had met her recovery goals and had no ongoing needs (Tr. 18, 864, 870). Notably, plaintiff did not need any assistance with her activities of daily living (Tr. 18, 865-866). Although plaintiff complained of symptoms after April 2013, physical examinations were persistently normal (Tr. 18, 735, 739, 770, 774, 779, 785). And, plaintiff also on two occasions stated that she felt "well" or "good (Tr. 18, 739, 769).

With respect to plaintiff's daily activities, the ALJ noted that plaintiff had no problems with her personal care, cooked her own meals, performed light housework, drove, shopped, and watch television (Tr. 18-19, 320-323; *see also* Tr. 649, 865-866). The ALJ reasoned that plaintiff's activities suggested greater balance and coordination than plaintiff would otherwise admit (Tr. 19). *See* Hensley, 829 F.3d at 934 (daily activities may support RFC assessment).

The ALJ also relied on the opinions of the state-agency experts. Jan Hunter, D.O., opined in February 2013 that plaintiff could perform light work with additional nonexertional limitations (Tr. 102-104). In May 2013, John May, M.D., issued a similar assessment (Tr. 112-114). Both Dr. Hunter and Dr. May included a narrative explanation to justify the restrictions they assessed (Tr. 104, 114). *See* Social Security Ruling ("SSR") 96-6p (July 2, 1996), *Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants,* available at 1966 WL 374180, at *3. Consistent with this policy statement, the case law instructs that an ALJ may rely on "other" opinion evidence as part of the record as a whole. *See* Julin,

826 F.3d at 1089; Smith v. Colvin, 756 F.3d 621, 626-27 (8th Cir. 2014); 20 C.F.R. §§ 404.1527(e), 416.927(e).

Plaintiff next argues that the ALJ improperly relied entirely on objective evidence in evaluating her credibility. She also contends that the ALJ overlooked objective evidence substantiating her impairments.

The Commissioner has promulgated rules to guide an ALJ's inquiry into a claimant's subjective allegations. See 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186. In evaluating the limiting effects of symptoms, an ALJ must consider an individual's statements, the objective medical evidence, and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). "Other evidence" includes information provided by the claimant, his medical providers, and other individuals with knowledge of the claimant. Id. §§ 404.1529(c)(3), 416.929(c)(3). The regulations specifically mandate that an ALJ consider the consistency of the evidence. Id. In this respect, an ALJ should consider factors such as:

    (1) the individual's daily activities;

    (2) the location, duration, frequency, and intensity of symptoms;

    (3) precipitating and aggravating factors;

    (4) the type, dosage, effectiveness, and side effects of medication;

    (5) other palliative treatments;

    (6) other measures that afford relief; and

    (7) other factors related to functional limitations and other restrictions.

Id. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

The Eighth Circuit Court of Appeals requires that the ALJ consider the same criteria called the Polaski factors. See Buckner v. Astrue, 646 F.3d 549, 558 (8th Cir. 2011) (citing Polaski v.

Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)). However, an ALJ "need not explicitly discuss each Polaski factor." *Id.* (quoting Goff, 421 F.3d at 791 (quotation marks omitted)). Rather, a court must defer to an ALJ's credibility finding provided that he "explicitly discredits a claimant's testimony and gives a good reason for doing so." *Id.* (quoting Wildman, 596 F.3d at 968 (quotation marks omitted)). An ALJ's inferences need only be reasonable because "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008) (quoting Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001).

The ALJ found that plaintiff's subjective allegations were not entirely credible because they conflicted with the objective medical evidence and her daily activities (Tr. 17-19). Plaintiff first argues that the objective evidence showed impairment. The ALJ found that plaintiff had severe impairments (Tr. 14) that restricted her to a narrow range of sedentary work (Tr. 16), the most limited category contemplated by the regulations. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a). The ALJ reasonably determined that the objective evidence militated against the notion that she was disabled. *See* Perkins, 648 F.3d at 901 ("As is true in many disability cases, there is no doubt that the claimant is experiencing [a symptom]; the real issue is how severe that [symptom] is.") Blakeman v. Astrue, 509 F.3d 878, 883 (8th Cir. 2007) ("The issue is not whether [the claimant's] heart condition is fatiguing, it is whether [her] fatigue is disabling.").

Plaintiff then argues that the ALJ, after finding that her impairments could be reasonably be expected to cause her alleged symptoms, could not find her not credible based entirely on the objective medical evidence. An ALJ is certainly entitled to consider the objective evidence in evaluating credibility, 20 C.F.R. §§ 404.1529(c)(2),416.929(c)(2), and the ALJ also explicitly considered her daily activities (Tr. 18-19). Plaintiff protests that a claimant need not be

completely bedridden to be disabled. The Eighth Circuit Court of Appeals has held that an ALJ may at least consider the extent to which a claimant's daily activities undermine her subjective complaints. *See, e.g.*, Reece v. Colvin, 834 F.3d 904, 910 (8th Cir. 2016) (maintaining a house, driving, carrying a 20-pound grocery bag from store to car); Andrews v. Colvin, 791 F.3d 923, 929 (8th Cir. 2015) (cooking, cleaning, driving, shopping, and caring for personal grooming and hygiene); Ponder v. Colvin, 770 F.3d 1190, 1195-96 (8th Cir. 2014) (performing light housework, cooking, doing laundry, handling money and bills, shopping, watching television, driving, leaving house alone, attending church, and visiting with family); McDade v. Astrue, 720 F.3d 994, 997-98 (8th Cir. 2013) (cooking, caring for dogs, using a computer, driving with neck brace, and shopping for groceries with electronic cart); Perks, 687 F.3d at 1093 (preparing meals, using riding lawnmower, shopping for food, and maintaining finances);

Renstrom v. Astrue, 680 F.3d 1057, 1067 (8th Cir. 2012) (taking vacations, performing daily chores, and providing self-care); McCoy v. Astrue, 648 F.3d 605, 614 (8th Cir. 2011) (collecting cases and affirming based on daily activities including gardening, driving, and helping children get ready for school). And, in this case, the record, *inter alia*, revealed that plaintiff had no limitations whatsoever with respect to her personal care (Tr. 320-323, 865-866), that she could drive (Tr. 649), and walk "frequently" (Tr. 923). The ALJ explicitly reasoned that plaintiff's purported problems with balance and coordination were cast into doubt by such activities (Tr. 19). The ALJ inferred that plaintiff's daily activities were comparatively robust. That undermined her allegations.

Plaintiff also faults the ALJ for miscalculating her body mass index ("BMI"). The Commissioner concedes that the ALJ mistook plaintiff's testimony about her height and weight,

Defendant's Brief, p. 14, but retorts that plaintiff has adduced no evidence that any mistake led to an erroneous calculation of RFC.

The ALJ did not rely upon the mistaken BMI, and gave plaintiff the benefit of the doubt, finding that she could only perform sedentary work, as opposed to the light work the state-agency experts thought possible (Tr. 19, 92-94, 112-114). The ALJ relied on ample evidence showing normal physical findings and that plaintiff walked "frequently," leaving scant room for plaintiff's obesity to reduce plaintiff's RFC beyond the sedentary level found by the ALJ. The ALJ's minor error concerning BMI was harmless.

Next, plaintiff contends that the ALJ did not adequately develop the record. She asserts that the ALJ should have ordered a consultative examination.

Claimants bear the primary burden to develop the record. *See, e.g.*, Kamann v. Colvin, 721 F.3d 945, 950 (8th Cir. 2013). 20 C.F.R. §§ 404.1520b and 416.920b echo the preexisting case law holding that an ALJ need not take further action to develop the record where the evidence, despite certain inadequacies, is sufficient to permit a decision regarding whether the claimant is disabled. 20 C.F.R. §§ 404.1520b(b), 416.920b(b); *accord Kamann*, 721 F.3d at 950; Martise v. Astrue, 641 F.3d 909, 926-27 (8th Cir. 2011). Furthermore, even where a claimant shows error, she must also demonstrate unfairness or prejudice flowing from a supposed violation of the duty to develop the record to warrant reversal. *See* Jones v. Astrue, 691 F.3d 730, 734-35 (8th Cir. 2012) ("A mere allegation that additional beneficial evidence might have been gathered had the error not occurred is insufficient" to obtain reversal based on a violation of the duty to develop the record); Weber v. Barnhart, 348 F.3d 723, 725-26 (8th Cir. 2003); Haley v. Massanari, 258 F.3d 742, 749-50 (8th Cir. 2001); *accord* Shinseki v. Sanders, 556 U.S

396, 409 (2009) (citing Nelson v. Apfel, 131 F.3d 1228, 1236 (7th Cir. 1997) (applying harmless error review to ALJ's failure to develop record)).

The ALJ relied on ample medical evidence to support the RFC assessment (Tr. 17-18). The record in this case is over 1,000 pages in length and contains numerous exhibits illuminating plaintiff's condition. The Eighth Circuit Court of Appeals's recent decision in Hensley makes plain that an ALJ need not obtain a consultative examination in circumstances such as these. 829 F.3d at 932. In Hensley, the Eighth Circuit Court of Appeals rejected the notion that an ALJ must order a consultative examination to ensure that the RFC assessment is supported by specific medical opinion evidence. Id. Instead, an ALJ may properly base the RFC assessment on the medical records themselves. Id. The requirement that "some medical evidence" support the RFC assessment does not mandate that such evidence take any particular form, a precept that is consistent with the fact that RFC assessment is an administrative assessment reserved to the Commissioner. Id.; accord 20 C.F.R. §§ 404.1527(d), 416.927(d).

Lastly, plaintiff contends that the ALJ should have found that she met Listing 11.04 because she displayed symptoms satisfying the listings' criteria for at least three months after her stroke.

Listing 11.04 governs vascular insult to the brain (stroke), involving, in relevant part:

> B. Disorganization of motor function in two extremities (see 11.00(D)(1)), resulting in an extreme limitation (see 11.00(D)(2)) in the ability to stand up from a seated position, balance while standing or walking, or use of the upper extremities, persisting for at least three consecutive months after the insult .
> . . .

20 C.F.R., Pt. 404, Subpt. P, App 1, Listing 11.04.

Plaintiff asserts that the ALJ reasonably found that she ultimately improved, but contends that the evidence shows that she suffered qualifying symptoms for at least three months after

9

the onset of her condition. The Commissioner disagrees that plaintiff has shown that she met the Listing for three consecutive months; after all, the Listing requires an "extreme limitation" in mobility, whereas plaintiff had only "slightly limited mobility" by September 2012, just a month after her August stroke (Tr. 17, 1242; see also Tr. 34). And, by October 2012, plaintiff could ambulate independently (Tr. 17, 1114, 1122, 1136, 1158, 1165, 1174). There is a genuine question whether plaintiff's symptoms did not persist at Listings-level severity for even three months. Plaintiff did not meet her burden of proof on this.

In addition, the "at least three consecutive months after the insult" language. The three-month requirement does not mean that any claimant who has qualifying symptoms that persist for three months can meet the Listing. The language precludes an award of benefits *prior* to the passage of three months following the insult. An individual, after all, is disabled if her impairments either prevent or *could be expected* to prevent her from working for twelve consecutive months. 42 U.S.C. §§ 405(a), 1383(d)(1); Barnhart v. Walton, 535 U.S. 212, 217-222 (2002); 20 C.F.R. §§ 404.1509, 416.909. The regulations are plain: "Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement." 20 C.F.R. §§ 404.1509, 416.909. Furthermore, the Listings themselves are explicitly subject to the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

The "three consecutive month" language is necessary but not sufficient. It can only operate to preclude an adjudicator from finding that a claimant's impairment satisfies Listing 11.04 when, even though three months have not yet elapsed since the insult, the impairment could nevertheless be *reasonably expected* to prevent the claimant from working for twelve consecutive months. The "three consecutive months" language forbids excessive projection of

symptoms in close proximity to the stroke; it does not displace the standard duration requirement. Section 11.00(I)(3) reinforces this view, suggesting that the three-month requirement exists to permit the agency adequate time to understand the extent to which the a claimant's impairment impacts physical and mental functioning.

Based on the record, it is the court's view that the Commissioner's decision that plaintiff is not disabled based on the ALJ's analysis is supported by substantial evidence.

It is therefore

ORDERED

Affirmed.

January 23, 2017

*Edward J. McManus*

Edward J. McManus, Judge
UNITED STATES DISTRICT COURT